(C. D. 187)

JUDGE & DOLPH, LTD. v. UNITED STATES

United States Customs Court, Third Division

(Decided June 29, 1939)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a suit against the United States, arising at the port of Chicago by protest against the collector's assessment of duty on certain Amontillado sherry wine at $1.25 per gallon under paragraph 804 of the Tariff Act of 1930, plus 20 cents per gallon

under the Liquor Taxing Act of 1934, as amended by the Liquor Tax Administration Act of 1936. The plaintiff does not object to the assessment at the rate of $1.25 per gallon under paragraph 804 of the Tariff Act of 1930 but claims that the wine is dutiable under the Liquor Taxing Act of 1934, as amended, at 10 cents per gallon only.

Section 6 of the Liquor Taxing Act of 1934 (48 Stat. 313) as amended by the Liquor Tax Administration Act of June 26, 1936 (49 Stat. 1939–1952, sec. 319 c), provides in part as follows:

On wines containing more than 14 per centum and not exceeding 21 per centum of absolute alcohol, 10 cents per wine-gallon;

On wines containing more than 21 per centum and not exceeding 24 per centum of absolute alcohol, 20 cents per wine-gallon.

The sole question involved is a question of fact, namely, did the Amontillado sherry wine contain more than 21 per centum of absolute alcohol? If the alcoholic content exceeded 21 per centum the tax of 20 cents per gallon was properly assessed, but, if the alcoholic content did not exceed 21 per centum and it did exceed 14 per centum, the wine was taxable at 10 cents per gallon only.

At the trial the plaintiff called Louis Johnson, warehouse manager of the importing company, who testified that he saw the 250 cases of Amontillado sherry wine in the shipment covered by the protest and that he opened two cases, numbers 527 and 539, and took a bottle from each, marked the labels with the case numbers from which they were taken, and sent the two bottles to the Valentine Laboratory by the delivery truck of his firm. The two bottles upon which the witness had marked the case numbers were admitted in evidence and marked Exhibit 1 and Exhibit 2.

The next witness called by the plaintiff was Mr. J. B. Lennon who testified that he is a chemist employed in the Valentine Laboratories; that he analyzed portions of the two bottles of wine in Exhibits 1 and 2 and determined the alcoholic content; that he used the United States Pharmacopoeia method of analysis. He explained all the details of the operations which he performed, stating that he first made two tests of a sample from each bottle and then made two further tests of the contents of each bottle and averaged the results of the tests; that one test of the wine in case 527 (Exhibit 1) showed 20.82 per centum of alcohol and the other test 20.38 per centum, and one test of the wine taken from the bottle from case 539 (Exhibit 2) showed 20.62 per centum of alcohol and the other test showed 20.79 per centum. The witness testified further that the United States Pharmacopoeia method is the standard test for determining the absolute alcoholic content of wine but there is another standard test known as the Association of Official Agricultural Chemists' test and that it will give accurate results, but there should be no difference in

the result obtained by either method. Counsel for defendant read into the record the method for determining alcoholic content described in the book entitled, "Official and Tentative Methods of Analyses of the Association of Official Agricultural Chemists."

The defendant then called the United States customs examiner, Mr. Thomas J. Murphy, who testified that he examined and made the advisory classification of the wine here in issue; that he drew a sample and submitted it to Mr. Block in the chemical laboratory; that the sample was "in the original bottle it was shipped in"; that he "put a label on it with the entry and case number from which the bottle was taken out"; that the entry number was "Warehouse Entry 6872" and the case number was "350"; that he put those numbers on a label and "stuck the label on the bottle"; and "took it up to the laboratory with the request to have it analyzed to determine the percentage of alcohol by volume."

The defendant then called Mr. Milton E. Block, who testified that he is a chemist employed in the United States Government laboratory in the appraiser's stores; that the sample which the examiner drew was received by him and he analyzed it by the A. O. A. C. (Association of Official Agricultural Chemists) method for determining alcoholic content by volume. He stated "I have one result of 21.50 percent, and then I have another result, which is slightly higher, of 21.64 percent alcohol by volume." He testified further that he examined two bottles; that those two samples were samples brought up by the preceding witness (Mr. Murphy); that two certificates signed by him are among the papers in the case. On cross-examination he testified that Mr. Murphy brought the two bottles to him; that "these particular bottles as far as the laboratory number is concerned corresponded with the 'Amontillado' sort"; that he could not recall specifically how the bottles were labeled. He said "I can only go by the records. I know they must have been marked 'Amontillado.'" He testified further that he did not specifically recall whether they were marked "Cloroso Sherry." Presiding Judge McClelland asked the witness, "You just go by the laboratory number," and the witness said, "That's all."

The labels on the bottles in Exhibits 1 and 2 contain the words, "Alcoholic Strength 21% by volume."

Counsel for the plaintiff draws attention to an apparent discrepancy in the record in that defendant's witness Murphy testified that he drew one bottle from case 350 as a sample and took it to the chemical laboratory and witness Block testified that he received two bottles and made an analysis of the contents of each. Counsel for the plaintiff suggests in his brief that the Government chemist's analysis must have related to some other wine than that herein under consideration. While the examiner did testify that he drew "a sample" which was "in the original

'bottle" and that he "put a label on it" and "took it up to the labora-tory," as above recited, the chemist, Mr. Block, testified that he examined two bottles, and, in answer to the following question by Presiding Judge McClelland, "Those two samples were the samples brought up by the preceding witness?" he said "Yes, sir." Presiding Judge McClelland made the following statement on the character of the sample drawn and examined:

Presiding Judge MᴄCʟᴇʟʟᴀɴᴅ. The preceding witness testified he took two samples; that he properly marked them and took them up to the laboratory. This witness has testified that those two samples were brought up by the preceding witness and he analyzed them. So the connection is complete.

There evidently is some confusion in the record as to the number of bottles of wine which Mr. Murphy drew as a sample but it is evident from the statements of witness Block and Presiding Judge McClelland that there was an understanding at the trial that the examiner drew two bottles and delivered them to the chemist, Mr. Block, and that both were labeled with the entry and the number of the case which contained the "Amontillado" sherry wine.

Counsel for the defendant calls attention to a certificate of an officer of the Spanish Republic attached to the invoice which shows that the Amontillado sherry contains 21.4 per centum of alcohol by volume. This certificate was not offered or received in evidence and accordingly cannot be considered, citing *R. C. Williams & Co.* v. *United States*, 26 C. C. P. A. 210, C. A. D. 19. Furthermore, the certificate is written in the Spanish language, and, as no translation was furnished, it would be inadmissible in any event.

There appears to be a direct conflict in the testimony. One chemist who examined the contents of a bottle from case 527 and the contents of one from case 539 found that the alcoholic content was less than 21 per centum and the other chemist, who was equally well qualified, examined the contents of two bottles out of case 350 and found that the alcoholic content was in excess of 21 per centum. It is significant that all of the wine analyzed contained different percentages of alcohol, no two analyses being the same.

The collector's classification is entitled to the presumption of correct-ness and, although the Government chemist analyzed the contents of but two bottles out of a shipment of 250 cases of sherry and the collec-tor classified the entire shipment on the basis of such analyses, the burden is cast upon the plaintiff to prove by a preponderance of evi-dence that the classification is incorrect. We are of opinion that the evidence introduced by the plaintiff showing that two bottles out of the 250 cases of wine had an alcoholic content of less than 21 per centum fails to meet the burden cast upon him. The protest is therefore over-ruled. Judgment will be entered in favor of the defendant.